Filed 6/20/22 P. v. Reyes CA5
Opinion following rehearing

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>NATALIE BRITO REYES,<br><br>Defendant and Appellant. | F081941, F081943<br><br>(Super. Ct. Nos. BF179786A, BF172411B)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County. Stephen D. Schuett, Judge.

Kevin J. Lindsley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Natalie Brito Reyes was a passenger in a vehicle detained by law enforcement. The detaining officers ordered Reyes out of the car. She complied and left her purse in

the vehicle. The driver was next ordered out. He hesitated, clutched the purse, placed it on the rear floorboard, and then exited.

As it turned out, the purse contained methamphetamine. Reyes initially denied knowing about the drugs but then admitted they were hers. The driver admitted they were his. Reyes was arrested and charged with selling methamphetamine; the driver was not.

At trial, the driver testified he placed the methamphetamine in the purse after the vehicle was stopped by law enforcement. Officers variously testified the drugs were Reyes's, she intended to sell them, and the driver was not involved in the crime. The jury found Reyes guilty.

Reyes now complains the officers' opinion testimony was inadmissible and prejudicial. Specifically, she faults the testimony for expressing a direct opinion she was guilty. As explained below, the opinion testimony in this case was inadmissible and prejudicial. We will reverse the judgment.[1]

## BACKGROUND

**Charges**

The Kern County District Attorney charged Reyes with two crimes: Transporting methamphetamine with intent to sell (Health and Saf. Code, § 11379, subd. (a); Count 1) and possessing methamphetamine with intent to sell (Health and Saf. Code, § 11378; Count 2). It was further alleged Reyes suffered prior strike convictions (Pen. Code, §§ 667, subds. (c)-(j) & 1170.12, subds. (a)-(e)).

**Evidence**

Law enforcement officers detained a vehicle in which Reyes was a passenger. She was ordered out of the car and, while complying, left her purse on the "center console."

---

[1] Reyes's challenge to fines and fees imposed as part of the judgment is moot.

2.

The driver was similarly ordered out of the car. He did not comply without hesitation. Prior to exiting, "he grabbed the purse" and "tr[ied] to get out of the car with it in his hand." An officer directed him to leave it in the car and it was placed on "the rear floorboard."

While on scene, officers searched the purse and found it contained approximately 60 grams of methamphetamine. An officer questioned Reyes. Reyes initially denied possessing the drugs. The officer accused of her lying. Eventually, Reyes confessed. The officers subsequently searched Reyes's nearby bedroom.[2] There, they found a "black digital scale, a clear glass smoking pipe with a bulbous round end, and" money.

Back at the scene, the same officer who questioned Reyes now began questioning the driver. The driver admitted the drugs were his and said the purse contained 1.6 grams of methamphetamine. He denied any connection to Reyes's bedroom.

At trial, the questioning officer testified he concluded the driver was not aware of the drugs in the purse. This conclusion was based largely on the discrepancy between the quantity of drugs the driver claimed were in the purse and the actual amount. Reyes objected to the testimony in that it "[i]nvade[d] the province of the jury." The objection was overruled.

An expert witness testified the drugs were "packaged in … quantities ready to sell …." The expert was then asked if he had "an opinion as to whether [Reyes] possessed the methamphetamine for sale?" Reyes objected "as to who possessed" the drugs. The objection was overruled. The expert answered Reyes intended to sell the drugs.

---

[2] Reyes's residence "was one street to the north" of the traffic stop. Officers apparently searched her bedroom pursuant to a probation condition. The probation-related facts were kept from the jury, leaving an evidentiary gap in the trial evidence. The jury was instructed "not [to] speculate as to the basis for the stop and search."

The expert was next asked a similar question about whether Reyes "transport[ed] the methamphetamine for the purpose of selling it[.]" He answered that she did. The question was repeated and the same answer was given. Reyes objected the second time, complaining "[a]s to who was transporting, [the subject] is not within the scope of" the witness's expertise. The objection was overruled.

The driver also testified at trial. He stated he placed the drugs in the purse when the officers pulled the car over. This time, he claimed to live with Reyes at the address where the officers found the scale, pipe, and money. He denied stating only 1.6 grams of methamphetamine were in the purse.[3]

The questioning officer testified again in rebuttal. He reiterated the determination the driver was not involved in the crime. He conceded drug sellers often downplay culpability.

**Verdict and Sentence**

The jury found Reyes guilty as charged. Based on the conviction, the court found Reyes violated probation in case no. BF172411B. She was sentenced to concurrently serve six years in state prison for each case.

## DISCUSSION

The issue on appeal is whether the testimony discrediting the driver's admissions and the opinions Reyes possessed the drugs were proper. We conclude the testimony was inadmissible and prejudicial.

" 'California law permits a person with "special knowledge, skill, experience, training, or education" in a particular field to qualify as an expert witness (Evid. Code, § 720) and to give testimony in the form of an opinion (*id.,* § 801). Under Evidence Code section 801, expert opinion testimony is admissible only if the subject matter of the

_____

[3] We reviewed the video footage of the driver's statement. He does appear to state "one point six grams," contrary to his testimony. He was not, however, confronted with the video footage at trial.

testimony is "sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." ' " (*People v. Vang* (2011) 52 Cal.4th 1038, 1044 (*Vang*).) "[T]he pertinent question is whether, even if jurors have some knowledge of the subject matter, expert opinion testimony would assist the jury." (*People v. Prince* (2007) 40 Cal.4th 1179, 1222 (*Prince*).)

" '[T]he rationale for admitting opinion testimony is that it will assist the jury in reaching a conclusion called for by the case. "Where the jury is just as competent as the expert to consider and weigh the evidence and draw the necessary conclusions, then the need for expert testimony evaporates." ' " (*Summers v. A.L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, 1183.) "In other words, when an expert's opinion amounts to nothing more than an expression of his or her belief on how a case should be decided, it does not *aid* the jurors, it *supplants* them." (*Ibid.*)

In general, " 'an expert may not give an opinion whether a witness is telling the truth, for the determination of credibility is not a subject sufficiently beyond common experience that the expert's opinion would assist the trier of fact; in other words, the jury generally is as well equipped as the expert to discern whether a witness is being truthful.' " (*People v. Sanchez* (2019) 7 Cal.5th 14, 46.) Nonetheless, "[e]xpert opinion testimony is not inadmissible merely 'because it embraces the ultimate issue to be decided by the trier of fact.' (Evid. Code, § 805.)" (*People v. Lowe* (2012) 211 Cal.App.4th 678, 684.)

"Despite the circumstance that it is the jury's duty to determine whether the prosecution has carried its burden of proof beyond a reasonable doubt, opinion testimony may encompass 'ultimate issues' within a case." (*Prince, supra,* 40 Cal.4th at p. 1227.) "On the other hand, '[e]xpert opinion is not admissible if it consists of inferences and conclusions which can be drawn as easily and intelligently by the trier of fact as by the witness.' " (*People v. Valdez* (1997) 58 Cal.App.4th 494, 506 (*Valdez*).) "[A]n expert's opinion that a defendant is guilty is both unhelpful to the jury—which is equally

equipped to reach that conclusion—and too helpful, in that the testimony may give the jury the impression that the issue has been decided and need not be the subject of deliberation." (*Prince, supra,* 40 Cal.4th at p. 1227.)

"[A]ny ruling by a trial court on the admissibility of evidence" is reviewed for abuse of discretion." (*People v. Waidla* (2000) 22 Cal.4th 690, 717.) "Absent fundamental unfairness, state law error in admitting evidence is" reviewed by "ask[ing] whether it is reasonably probable the verdict would have been more favorable to the defendant absent the error." (*People v. Partida* (2005) 37 Cal.4th 428, 439 (*Partida*).) " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " (*In re Gay* (2020) 8 Cal.5th 1059, 1086 (*Gay*); *People v. Mar* (2002) 28 Cal.4th 1201, 1225.)

Initially, we note the facts and issues in this case were simple. The jury needed only to determine who possessed the methamphetamine.[4] In so doing, the primary issue was credibility. Neither credibility nor possession were, at least in this case, proper subjects of expert opinion. The trial court thus erred in overruling the three objections to evidence the driver was lying and Reyes possessed the drugs.

It is true the testimony from the officer detailing why he did not believe the driver's admission was not expert testimony. But that is immaterial. "Lay opinion about the veracity of particular statements by another is inadmissible on that issue." (*People v. Melton* (1988) 44 Cal.3d 713, 744 (*Melton*).) The opinion here was tantamount to an opinion the driver was lying while at the scene. To make matters worse, after the driver testified at trial confessing to the crime, the officer again testified the driver was untruthful.

---

[4] Of course, there are other elements to the charged crimes. But the evidence to prove those elements, particularly intent to sell and transportation, was manifest.

Most importantly, an expert testified Reyes possessed the drugs with intent to sell. Three times. The testimony did not answer a hypothetical question. Rather, it was offered as direct evidence Reyes possessed the drugs. This is equivalent to an opinion Reyes was guilty and should not have been admitted.[5]

The inadmissible testimony in this case is materially indistinguishable from the testimony found prejudicial in *People v. Killebrew* (2002) 103 Cal.App.4th 644. There, an expert "testified to the subjective *knowledge and intent* of each occupant in [a] vehicle." (*Id.* at p. 658.) The court concluded the testimony was "the type of opinion that did nothing more than inform the jury how [the expert] believed the case should be decided. It was an improper opinion on the ultimate issue and should have been excluded." (*Ibid.*) This case is no different.

Indeed, our Supreme Court has acknowledged "there is a difference between testifying about specific persons and about hypothetical persons."[6] (*Vang, supra,* 52 Cal.4th at p. 1047.) To illustrate the difference, the expert here could appropriately testify the drugs were possessed with intent to sell *by a hypothetical person*. Such testimony is admissible because the average juror likely does not know the ins and outs of illicit drug sales.

---

[5] The People essentially concede the error but dispute resulting prejudice. Specifically, they state, "Since the testimony was a direct question as to [Reyes's] guilt and was not phrased in the form of a hypothetical question, it appears that it may have been objectionable …."

[6] The Supreme Court has not clearly stated whether experts may appropriately render opinions regarding specific persons or instead must always respond to hypothetical questions. (*Vang, supra,* 52 Cal.4th at p. 1048, fn. 4.) Indeed, *Vang* recognizes such an opinion "might be proper" "in some circumstances …." (*Ibid.*) But exceptional circumstances are not found in this case. Likewise, we do not reject the possibility an expert could render a specific opinion in an appropriate case. We only hold this is not such a case.

Jurors are, however, well equipped to decipher *who* possessed drugs in the first place,[7] particularly here where the evidence was simple. (Cf. *Valdez, supra,* 58 Cal.App.4th at p. 509 [expert opinion regarding specific persons admissible due to "unique facts" and "other elements" still in dispute].) The expert opinions on possession in this case clearly usurped the jury's role.

As a result, our confidence in the outcome is undermined. (See *Gay, supra,* 8 Cal.5th at p. 1086.) The lone material issue in dispute was whether the driver or passenger possessed the drugs. The driver stated at the scene and testified at trial he possessed the drugs. A law enforcement officer was permitted to testify the driver was essentially lying. Then, an expert witness was permitted to testify multiple times the passenger possessed the drugs. The officers' opinions were objected to but the objections were swiftly overruled. In that situation, it is likely the jury believed the opinions were in compliance with the law. (See *People v. Doane* (2021) 66 Cal.App.5th 965, 978 [overruling proper objection falsely conveys correctness to jury]; *People v. Lloyd* (2015)

---

[7] Notably, as one might expect, intent to sell and transportation were not meaningfully disputed. Possession was the determinative fact at issue.

236 Cal.App.4th 49, 63 [same].) But the opinions were not admissible, leaving the outcome a formality.[8] Accordingly, we will reverse the judgment.[9]

## PETITION FOR REHEARING

As noted *ante*, the judgment in this consolidated appeal included a six year concurrent sentence for violating probation in case no. BF172411B. In our original opinion, we concluded vacating the probation violation finding was unwarranted and left that six-year sentence intact.

Reyes petitioned for rehearing, urging us to reconsider vacating the probation violation finding. We granted the petition and solicited briefing from the parties.

---

[8] To be clear, an expert may appropriately testify drugs were possessed with an intent to sell. But *possession* itself is generally not the proper subject of expert testimony. Similarly, the officer who questioned the driver may properly relate to the jury the discrepancy between the amount of drugs the driver claimed to possess and the actual amount contained in the purse. But concluding the driver was lying or untruthful is an inference the jury must draw by itself.

The People suggest the testimony the driver was lying "was not objectionable" and "did not [amount to] a direct opinion as to [Reyes's] guilt." We disagree. It was no different than expressing an opinion Reyes possessed the drugs. The People also argue the objection itself—"that it invaded the province of the jury"—"was not [the] proper objection, since opinion evidence often goes to an ultimate issue." We again disagree. While opinion testimony may in fact go to the ultimate issue, the province invaded here was the jury's resolution of credibility. (*Sanchez, supra,* 7 Cal.5th at p. 46.)

To the extent it might feel unavoidable to explain why the officers did not arrest the driver, we are confident the court and counsel can well handle the challenge presented. Nonetheless, we reiterate "[l]ay opinion about the veracity of particular statements by another is inadmissible on that issue. … With limited exceptions, the factfinder, not the witnesses, must draw the ultimate inferences from the evidence." (*Melton, supra,* 44 Cal.3d at p. 744; cf. *People v. Hurlic* (1971) 14 Cal.App.3d 122, 127 [a witness may express "general impression" if details are too complex or subtle to articulate].)

[9] Reyes also argued the opinion testimony violated her right to federal due process. Federal due process is violated if the erroneous "admission of evidence … makes the trial *fundamentally unfair*." (*Partida, supra,* 37 Cal.4th at p. 439.) The issue is moot because we reverse the judgment on state law error alone.

The People now concede the record justifies relief.  We agree.

## DISPOSITION

The judgment is reversed.  The probation violation finding in case no. BF172411B is vacated.  Upon remand, the trial court is directed to conduct further proceedings consistent with this opinion.


SNAUFFER, J.

I CONCUR:


SMITH, J.

10.

POOCHIGIAN, Acting P. J., Dissenting.

I respectfully dissent from the majority opinion's reversal of Natalie Brito Reyes's (Reyes) convictions. I would find that Reyes's evidentiary allegations are meritless and, moreover, she failed to raise an objection to one of her primary appellate contentions. Finally, to the extent any of the evidence was erroneously admitted, I believe the errors were harmless under any standard.

## I.      Opinion Testimony About Witness Credibility

It is well recognized that lay and expert witnesses, including police officers, may not express their opinions regarding witness credibility because such testimony invades the province of the jury and is not sufficiently beyond common experience to be of assistance to the trier of fact. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 82 (*Coffman* ); *People v. Melton* (1988) 44 Cal.3d 713, 744 (*Melton*); *People v. Sergill* (1982) 138 Cal.App.3d 34, 39–40 (*Sergill*); *People v. Smith* (1989) 214 Cal.App.3d 904, 915–916 (*Smith*).) However, a lay witness "is occasionally permitted to express an ultimate opinion based on his or her perception, but only where 'helpful to a clear understanding of his [or her] testimony' [citation], i.e., where the concrete observations on which the opinion is based cannot otherwise be conveyed." (*Melton, supra,* 44 Cal.3d at p. 744.)

In *Sergill, supra,* 138 Cal.App.3d 34, a police officer was allowed to testify that he believed that a child's accusations of sexual abuse were credible. The trial court overruled defense objections and stated, in the jury's presence, that the officer was qualified to render an opinion on the victim's credibility in light of his experience. (*Id.* at p. 38.) A second officer was allowed to testify that the officer had obtained the " 'truth' " from the child. (*Ibid.*) *Sergill* reversed the conviction and held the error was prejudicial under *People v. Watson* (1956) 46 Cal.2d 818 because the officers were not qualified as experts, their testimony concerning the child's credibility was irrelevant, and the officers' testimony, along with the court's comments in the jury's presence, amounted to the

"usurpation of the jury's function as fact finder." (*Sergill*, at p. 41; see also *People v. Clotfelter* (2021) 65 Cal.App.5th 30, 64–70.)

In *Smith, supra*, 214 Cal.App.3d 904, the court held an officer's testimony that he believed the victim's dying declaration as to the perpetrator's identity was inadmissible. The error was not prejudicial under *Watson* because independent facts strongly linked the defendant to the killing and, since the officer had known the victim for two years, and the victim apparently trusted him, the officer "may also have been qualified to render an opinion as to the victim's character for honesty and veracity." (*Smith*, at p. 915.)

*Melton* held the trial court erroneously admitted an investigator's testimony about his "assessment" of a witness's credibility because the evidence was essentially irrelevant and incompetent given the investigator was not an expert on judging credibility, and he "knew nothing of [the witness's] reputation for veracity." (*Melton, supra*, 44 Cal.3d at p. 744.) *Melton* concluded the error was not prejudicial under *Watson* since the investigator only answered four questions on this subject, the prosecutor did not exploit the issue in closing argument, and there was extremely strong evidence of guilt. (*Melton*, at p. 745.)

## II.    Officer Puryear's Trial Testimony

Reyes argues the court improperly allowed Officer Puryear to testify in his direct and rebuttal testimony about his opinion that he believed Reyes, not Celso Mascorro,[1] possessed the methamphetamine found in the purse. Reyes argues Puryear's opinions were irrelevant and inadmissible, and the evidence was prejudicial under any standard because the jurors were likely "to give special credence to opinions from law enforcement," and usurped the jury's factfinding and credibility functions.

---

[1] Mr. Mascorro is identified as "the driver" throughout the majority opinion.

### A.     *Reyes's First Claim of Error*

Reyes's first appellate claim of error is based on Officer Puryear's testimony during his final round of redirect examination, when the prosecutor asked Puryear about his questions to Mascorro at the scene, and whether he was trying to find out if Mascorro was selling drugs or did not know what was going on. Puryear said yes. The prosecutor asked what Puryear concluded. At that point, defense counsel objected and asserted the question invaded the province of the jury. The court overruled the objection, and Puryear testified that he concluded Mascorro did not know what was going on.

This exchange did not occur in a vacuum, however, but began in defense counsel's initial cross-examination, when he asked Officer Puryear if he accused Reyes of selling drugs, and also accused her of lying when she denied it; Puryear said yes. Defense counsel asked, "And in your opinion, what was she lying about at that time? What was your thought process to say that?" Puryear testified that defendant initially lied about saying the narcotics were not hers. Defense counsel asked if "that is what you thought the lying was about," that Reyes denied the narcotics were hers "and you accused her of lying." Puryear replied he accused Reyes of lying about multiple things.

On redirect, the prosecutor specifically referred to defense counsel's questions, and asked Officer Puryear what he thought Reyes was lying about. Puryear testified that he believed she initially lied when she claimed the drugs were not hers, then claimed the drugs were for her personal use, and he believed that was also a lie. The prosecutor asked Puryear about his questions to Mascorro, his claim the drugs belonged to him, that there were about 1.6 grams in the purse, and whether Mascorro's statement was true or false. Puryear said Mascorro's statement was false because there were over 60 grams in the purse, and he did not arrest Mascorro because he determined Mascorro's answers showed he did not know what was in the purse.

Defense counsel returned to Mascorro's statements on the next round of recross-examination, and asked Officer Puryear if he asked Mascorro about the amount of drugs

3

in the purse because he "wanted to verify whether or not he was telling the truth," and if he knew she was selling drugs. Puryear replied he wanted to verify if Mascorro knew defendant was selling narcotics and they were working together, or if he had no idea what she was doing. Defense counsel asked if Puryear was trying to decide whether or not Mascorro was involved, and Puryear said yes.

Reyes's appellate claim of alleged evidentiary error occurred on the next round of redirect examination, when the prosecutor asked Officer Puryear about defense counsel's cross-examination questions, and whether he was trying to find out if Mascorro was selling drugs or did not know what was going on. Puryear said yes. The prosecutor asked what Puryear concluded. Defense counsel objected and asserted the question invaded the province of the jury. The court overruled the objection, and Puryear testified that he concluded Mascorro did not know what was going on.

"A lay witness is occasionally permitted to express an ultimate opinion based on his perception, but only where 'helpful to a clear understanding of his testimony' [citation], i.e., where the concrete observations on which the opinion is based cannot otherwise be conveyed." (*Melton, supra,* 44 Cal.3d at p. 744.) In contrast to *Sergill* and *Smith,* the prosecutor's questions were not designed to elicit Officer Puryear's opinion about Mascorro's general credibility or Reyes's guilt, but whether Mascorro's responses were consistent or inconsistent with the evidence found during the search of the purse that night, to respond to the defense's attempt to undermine Puryear's decision not to arrest Mascorro. (See, e.g., *People v. Brown* (2001) 96 Cal.App.4th Supp. 1, 33–34 [officers' opinion of witness's credibility properly admitted, not to show that witness had been truthful, but to show reasonableness of officers' conduct].)

More importantly, Officer Puryear did not express an ultimate opinion or vouch about the truthfulness of Reyes or Mascorro. Instead, Puryear testified about the conflicts between Mascorro's statements at the scene compared to the nature and location of the

4

physical evidence discovered in this case, based on his personal knowledge and observations.

**B.** *Reyes's Second Claim of Error*

Reyes's second appellate claim of evidentiary error is based on Officer Puryear's testimony on rebuttal, that he did not arrest Mascorro because he did not believe he was selling drugs since Mascorro said he used $5 worth of methamphetamine per day, that statement did not make sense, "there was well over [an amount for] personal use found during the investigation," and he determined Mascorro was not selling drugs. Reyes argues the prosecutor "purs[u]ed improper lay opinion testimony regarding [defendant's] guilt," Puryear improperly testified to his opinion that defendant was guilty, and that constitutes cumulative error in light of the allegedly inappropriate testimony that Puryear and Detective Diaz gave in the prosecution's case-in-chief.

Reyes did not object to the prosecutor's questions on rebuttal or Officer Puryear's testimony in response. The failure of trial counsel to object to claimed evidentiary error on the same ground asserted on appeal results in a forfeiture of the issue. (*People v. Dykes* (2009) 46 Cal.4th 731, 756.) Similarly, "[a]s a general rule, ' "[a] defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion, and on the same ground, the defendant objected to the action and also requested that the jury be admonished to disregard the perceived impropriety." ' [Citation.] The defendant's failure to object will be excused if an objection would have been futile or if an admonition would not have cured the harm caused by the misconduct." (*People v. Centeno* (2014) 60 Cal.4th 659, 674.)

In her opening brief, Reyes did not acknowledge her failure to object and did not claim prosecutorial misconduct. After the People noted her failure to object in its brief, Reyes argued in her reply brief for the first time that an objection to the rebuttal testimony was not required because it would have been futile since the court had

5

overruled counsel's prior objections to the testimony from Officer Puryear and Detective Diaz, based on *People v. Hill* (1998) 17 Cal.4th 800.

An appellate court generally declines to address issues raised for the first time in a reply brief absent justification for failing to present the argument earlier. (*People v. Duff* (2014) 58 Cal.4th 527, 550, fn. 9; *Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11.) While the trial court overruled defense counsel's objections to the prior testimony of Officer Puryear and, as will be discussed below, Detective Diaz, the court did not make any statements to discourage objections or prevent counsel from raising any issues during the examination of witnesses as condemned in *People v. Hill, supra,* 17 Cal.4th 800, where the "sheer number of the instances of prosecutorial misconduct, together with other trial errors," created a "negative synergistic effect" that precluded a fair trial. (*Id*. at p. 847.) "Nothing in this record indicates that an objection would have been futile." (*People v. Centeno, supra*, 60 Cal.4th at p. 674.)

In any event, as with Reyes's first appellate claim of error, Officer Puryear's rebuttal testimony must be reviewed in context. After Puryear testified for the prosecution, Mascorro testified as a defense witness that he sold methamphetamine, the drugs in the purse belonged to him, and he removed the bags from his pocket and placed the drugs in the purse before the officer made him get out of the car. Mascorro further testified that Puryear asked him questions at the scene, but Mascorro insisted he did not tell Puryear anything, he never told Puryear that he put 1.6 grams in the purse, and he never told Puryear the drugs in the purse belonged to him. He told the "other" officer, referring to Officer Malley, that the drugs belonged to him, and claimed Puryear was not present when he made that statement. Mascorro ultimately testified that Puryear asked him how much methamphetamine was in the purse. Mascorro claimed he was about to answer the question, but Puryear laughed at him, so he never responded.

In rebuttal, Officers Malley and Puryear testified that they never saw Mascorro reach into his pocket or put anything in the purse before he stepped out of the vehicle.

The prosecution played the video from Puryear's body-cam of his interrogation of Mascorro, that undermined Mascorro's trial testimony about his statements at the scene – the video showed that Puryear asked Mascorro if he knew about the drugs, and Mascorro said the drugs belonged to him; Puryear asked how much methamphetamine he used and the amount in the purse, and Mascorro said he smoked $5 worth every day, and about 1.6 grams were in the purse; and Mascorro never told Puryear that he sold drugs.

In his rebuttal testimony, after the video was played, Officer Puryear testified that Mascorro said he used methamphetamine, but he did not say that he sold drugs or explain how the drugs ended up in the purse. The prosecutor noted that Mascorro just testified that Puryear was not present when Mascorro claimed the drugs belonged to him and asked Puryear if that was accurate. Puryear testified Mascorro's account was not accurate "[b]ecause he specifically told me that the drugs were his," as shown in the video.

Officer Puryear testified he did not arrest Mascorro that night because he did not believe he was selling drugs since Mascorro said he used $5 worth of methamphetamine per day and that statement did not make sense because "there was well over [an amount for] personal use found during the investigation." The following exchange ensued, which is the basis for Reyes's second appellate claim of evidentiary error:

"[The prosecutor].   And, in fact, he did tell you he uses five dollars a day; correct?

"A.   Yes, that's correct.

"Q.   *And is that why you didn't arrest him*?

"A.   Yes.

"Q.   *And is that why you determined he wasn't selling*?

"A.   Yes." (Italics added.)

7

As previously noted, defense counsel did not object but cites to this exchange as improper opinion testimony. In contrast to *Sergill* and *Smith*, Officer Puryear was not asked, and did not testify, whether he *believed* Reyes was guilty of possessing methamphetamine for sale or Mascorro was not credible. Instead, the prosecutor's questions were responding to the defense strategy to undermine Puryear's decision not to arrest Mascorro that night. Puryear's testimony about why he did not arrest Mascorro was not based on his personal beliefs or opinions about the credibility of Mascorro and/or Reyes, but on the undisputed conflicts between Mascorro's prearrest statements and the evidence found at the scene.

## III. Detective Diaz's Testimony

Reyes's third appellate claim of evidentiary error is based on the testimony of Detective Diaz, who appeared as the prosecution's expert on drug use and sales. Reyes argues Diaz was improperly allowed to give direct testimony on her guilt, that she possessed the drugs in the purse for the purposes of sales and transportation. In raising this argument, Reyes acknowledges that Diaz could have testified to this same opinion through a series of hypothetical questions, but asserts the prosecutor instead posed direct questions about Reyes's specific case, and Diaz improperly testified that she was guilty of transportation and possession of methamphetamine for sale.

"It is required, not prohibited, that hypothetical questions be based on the evidence. The questioner is not required to disguise the fact the questions are based on that evidence." (*People v. Vang* (2011) 52 Cal.4th 1038, 1041.) In cases involving the possession of narcotics, " 'experienced officers may give their opinion that the narcotics are held for purposes of sale based upon such matters as the quantity, packaging and normal use of an individual; on the basis of such testimony convictions of possession for purpose of sale have been upheld." (*People v. Carter* (1997) 55 Cal.App.4th 1376, 1377; *People v. Dowl* (2013) 57 Cal.4th 1079, 1084.) "Thereafter, it is for the jury to credit such opinion or reject it." (*People v. Harris* (2000) 83 Cal.App.4th 371, 375.)

8

**A.** *Diaz's Testimony*

The majority of Detective Diaz's testimony was in response to hypothetical questions similar to the undisputed nature of the physical evidence found in this case – the amount of methamphetamine, the manner that it was packaged, significance of the cash, and significance of a digital scale. He testified about his extensive experience investigating narcotics cases, and his general opinion that larger amounts of the methamphetamine were possessed for sales, whereas smaller amounts of approximately one gram were for personal use.

Toward the end of Detective Diaz's testimony, the prosecutor asked for his opinion about whether the drugs were possessed for purposes of sale, but did so by citing "*the totality of the evidence you heard in this case*," and the evidence found in "[d]efendant's purse," whether "[d]efendant possessed the methamphetamine for sale?" The court overruled defense counsel's objections "as to who possessed it," and a later objection as to who "transported" the drugs. Diaz testified to his opinion that Reyes transported and possessed the drugs for purposes of sales based on the amount, the packaging, and the absence of drug use paraphernalia.

Defense counsel declined to cross-examine Detective Diaz.

**B.** *Analysis*

Reyes argues Detective Diaz improperly addressed the ultimate issue in this case – that she transported and possessed methamphetamine for purposes of sale, and his testimony constituted reversible error as explained in *People v. Killebrew* (2002) 103 Cal.App.4th 644 and *In re Frank S.* (2006) 141 Cal.App.4th 1192.

As relevant to Detective Diaz's expert testimony, the concerns addressed in *Frank S.* and *Killebrew* are not present in this case. Diaz did not testify about his belief regarding Reyes's subjective knowledge and intent or express an opinion about an issue reserved for the jury in the absence of substantial evidence to support the charged offenses. Instead, Diaz's opinion testimony in this case was similar to that addressed in

9

*People v. Romo* (2016) 248 Cal.App.4th 682, where the prosecution's narcotics expert testified to his opinion that the defendant was not a "blind mule" who was unaware that drugs were in his car when he crossed the border, a conclusion based "on where the drugs were found in defendant's car; the fact there were two compartments in the car to hide the drugs, which [the expert] believed would have taken up to a day or more to make; and the amount of time it would have taken to place the drugs inside each compartment. According to [the expert], the fact that the seats had to be removed to access the drugs also suggested defendant was not a blind mule." (*Id*. at pp. 688–689.)

*Romo* relied on *Vang* and held the expert's testimony was properly admitted because the expert "relied on various factors to opine that defendant was not a blind mule, including the quantity, type and location of the drugs found in defendant's car; defendant was [not] a United States citizen … ; defendant's car was licensed in Mexico; defendant did not frequently cross the border in his car, and, thus, there was no predictable pattern in contrast to someone who lived in Mexico and worked in the United States; and the lack of a GPS device to track the large quantity of drugs found in the car. *Such testimony was not improper*. [Citation.]" (*People v. Romo, supra*, 248 Cal.App.4th at p. 697, italics added.)

As in *Romo*, Detective Diaz relied on the undisputed facts about the physical evidence found in this case, including the quantity of methamphetamine, the packaging, the electronic scale, and the cash, to testify to his opinion that this was a sales and transportation case, and the drugs were not possessed for personal use.

## III.    Prejudice

The erroneous admission of testimony about witness credibility is reviewed pursuant to *People v. Watson*, *supra*, 46 Cal.2d 818, and defendant must demonstrate that it is reasonably probable that a result more favorable to defendant would have been reached in the absence of the error. (*Melton, supra*, 44 Cal.3d at p. 745; *Smith, supra*, 214 Cal.App.3d at p. 915–916; *Coffman, supra*, 34 Cal.4th at p. 76.)

"[T]he admission of evidence, even if erroneous under state law, results in a due process violation only if it makes the trial *fundamentally unfair.*" (*People v. Partida* (2005) 37 Cal.4th 428, 439.) Only on "rare and unusual occasions" will the admission of evidence result in an error of such magnitude so as to raise federal due process concerns (*People v. Albarran* (2007) 149 Cal.App.4th 214, 232) and trigger review under *Chapman v. California* (1967) 386 U.S. 18, where the reviewing court must determine "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (*Id.* at p. 24; *People v. Aranda* (2012) 55 Cal.4th 342, 367.)

Even if the testimony from Officer Puryear and Detective Diaz was improperly admitted, I would find the court's evidentiary errors were not prejudicial under any standard. It is again important to note the context in which the jury heard and considered the testimony from Puryear and Diaz. In contrast to the grievous errors in *Sergill* and *Clotfelter*, the evidence in this case did not solely consist of law enforcement testimony about conflicting pretrial statements. The jury was not presented with a situation where a witness testified to his or her certainty that defendant was guilty, and the court did not endorse the relevance of inadmissible opinion evidence.

Also, in contrast to *Killebrew*, the opinions from Officer Puryear and Detective Diaz were not the sole evidence to establish the elements of the charged offenses. Instead, as in *Melton*, there was extremely strong evidence of Reyes's guilt that supported findings on all elements of the charged offenses, separate and apart from the alleged evidentiary errors. (*Melton, supra*, 44 Cal.3d at p. 745; see also *People v. Torres* (1995) 33 Cal.App.4th 37, 52.) Puryear and Officer Malley testified they attempted to stop the vehicle driven by Mascorro, they both got out of their patrol car and approached the vehicle with their flashlights, and the vehicle initially started to move away from them but then stopped. Mascorro was the driver, Reyes was sitting in the front passenger seat, and there were three young children in the back seat.

11

Officer Puryear approached the window of the front passenger door, his body-cam was activated, and he directed a flashlight through the window. Puryear testified that Reyes was sitting in the passenger seat, a large black purse was on her lap, and her left hand was on top of the purse. Puryear ordered Reyes to get out of the vehicle, she complied, and she left the purse on the vehicle's center console. The video from Puryear's body-cam was introduced at trial.

At the same time, Officer Malley approached the driver's side of the vehicle, and, after Reyes got out of the passenger door, he asked Mascorro to exit the vehicle. Mascorro failed to comply. Malley asked him to get out more than once. When Mascorro finally got out, he "grabbed the purse." Malley directed Mascorro to put it down, and Mascorro placed it on the rear floorboard.

The purse was searched, and it is undisputed that it contained Reyes's California driver's license, credit cards in her name, over $500 in various denominations, a coloring book, and three separate plastic bags of methamphetamine that weighed a total of 62.6 grams: two packages each weighed 21.9 grams, and the third package weighed four grams. The prosecution introduced photographs of the purse and its contents.

Officer Puryear testified that Reyes initially denied the drugs belonged to her but eventually admitted ownership of the drugs. Reyes's admission was not captured on the officers' body-cam videos, but nearly every other aspect of the case was corroborated by the videos. The testimony from Officer Malley and Puryear about what they saw when they approached the car, was supported by their body-cam videos – the purse was on defendant's lap with her hand on top of it, she left it in the vehicle when she got out of the passenger door, and Mascorro only reached for the purse as he got out of the driver's door. Puryear's body-cam recorded his interview with Mascorro, and the video showed Mascorro as he claimed there were just 1.6 grams in the purse for his personal use. Moreover, Mascorro's pretrial statements to the officers undermined nearly every aspect of his trial testimony – at trial, Mascorro claimed he lived with defendant, and they

12

shared the bedroom where the scale and additional currency were found; on the night of the incident, Mascorro gave a different address and said they had an on and off relationship.

The majority of Detective Diaz's testimony was based on his knowledge and experience in investigating narcotics cases, and his general explanation that larger amounts of methamphetamine were consistent with sales, the common weights that would be packaged for distribution would be "in pounds to half pounds, quarter pound, ounces, grams, things referred to as an eight ball, which is 3.5 grams, and a teener which [is] a 16th of a gram," whereas the typical methamphetamine user will use anywhere between a tenth to three-tenths of a gram, once or twice, depending on his or her tolerance and dependence on the drug.

While Detective Diaz responded to direct instead of hypothetical questions at the end of his testimony, his opinion was based on the undisputed nature of the physical evidence that existed in this case – the three plastic bags found in the purse, the parties' stipulation that the bags contained methamphetamine and weighed a total of 62 grams, the scale found in the bedroom, and the large amount of cash found in the purse and the bedroom.

In addition, the prosecutor did not exploit or rely on Officer Puryear's alleged opinion about the credibility of Mascorro and/or Reyes in closing argument or argue that Mascorro's claimed ownership of the drugs at trial was not credible because Puryear did not personally believe him. (See, e.g., *Melton, supra*, 44 Cal.3d at p. 745.) Instead, the prosecutor cited the body-cam video that showed the purse on Reyes's lap, that her identification was in the purse with the drugs, there was not enough time for Mascorro to allegedly move the drugs from his pocket to the purse because he was trying to back up the vehicle as the officers approached, the officers did not see Mascorro reach for the purse when they walked up to the car, and the body-cam videos did not show him reaching for the purse until he got out of the car. The prosecutor focused on how

Mascorro's trial testimony that the drugs belonged to him completely lacked credibility, not because of Puryear's personal opinion, but based on the evidence introduced before the jury of Mascorro's prior inconsistent statements at the scene as shown on the video.

It is not reasonably probable the testimony from Officer Puryear and Detective Diaz resulted in prejudice to Reyes or striking the evidence would have led to a result more favorable to Reyes. (See, e.g., *Melton, supra,* 44 Cal.3d at p. 745; *Smith, supra,* 214 Cal.App.3d at pp. 915–916.) The error did not alter the outcome of the trial and, thus, does not warrant reversal. (Cal. Const., art. VI, § 13; Evid.Code, § 353.) For the same reasons, I would conclude Reyes's due process rights were not violated and her trial was not fundamentally unfair.

POOCHIGIAN, Acting P. J.

14